NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHONTAL K.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.S., Z.K., I.S.,
*Appellees*.

No. 1 CA-JV 17-0235
FILED 11-14-2017

Appeal from the Superior Court in Navajo County
No. S0900JD201600008
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Coronado Law Firm, PLLC, Lakeside
By Eduardo H. Coronado, Kai M. Henderson
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee DCS*

_____

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Chief Judge Samuel A. Thumma and Judge James P. Beene joined.

_____

**J O H N S E N**, Judge:

¶1         Shontal K. ("Mother") appeals the superior court's order terminating her parental rights to her three children.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Mother was arrested in February 2016 and jailed after police responded to a report of domestic violence.  At the time, Mother had two children (a two-year-old and a one-year-old); the Department of Child Safety ("DCS") took temporary custody of them and filed a dependency petition alleging neglect.  At a mediation, Mother agreed that she would participate in services, including substance-abuse treatment, random drug testing, individual and domestic-violence counseling, parent-aide services and supervised visitation.  The DCS caseworker contacted Mother in jail and outlined the services DCS would make available to her upon her release, and asked Mother to write to her two children from jail and to contact the caseworker upon her release.  Mother, however, did not write to the children during her incarceration.  Moreover, although the jail informed DCS that Mother had been released in May 2016, Mother failed to contact DCS or her lawyer for six months after her release.

¶3         Without word from Mother, the superior court found the two children dependent in mid-2016 and adopted a case plan of family reunification.  In July 2016, DCS received a report that Mother had given birth to another child and that she and the child's father had left the infant with a friend without money or supplies for "a long period of time."  On petition by DCS, the court ruled the third child dependent.  DCS then moved in early November 2016 to sever Mother's parental rights to the three children.

¶4         Mother, meanwhile, was struck by a car on November 1 and injured.  In mid-November, she renewed contact with DCS by telephoning the case manager.  The caseworker told Mother she needed to participate in

a substance-abuse assessment and drug testing, but the caseworker did not refer Mother for such treatment because Mother told her she had already set up an intake meeting. Over the next few weeks, the caseworker periodically telephoned Mother, but each time, Mother hung up on her.

**¶5** The court set a termination hearing for January 23, 2017, and ordered Mother to contact DCS once a week pending the hearing. Although Mother called DCS as directed, she did not ask to visit the children and would not give the caseworker her address. Further, Mother declined visits with her children, saying that she was recovering from the auto accident.

**¶6** At the hearing, Mother conceded she had not made any effort to see or contact the children during the proceedings, saying she had not done so because she was having "so many problems" since her own mother passed away in February 2016. She asserted that she had left a message with the caseworker upon her release from jail, but the caseworker denied receiving any such message.

**¶7** The superior court severed Mother's parental rights based, *inter alia*, on abandonment pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1) (2017).[1] This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A) (2017), 12-120.21(A)(1) (2017) and -2101(A)(1) (2017).

## DISCUSSION

**¶8** The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶9** We review a termination order for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

Ariz. 278, 280, ¶ 4 (App. 2002). On appeal, this court will affirm a severance order unless it is clearly erroneous. *Id.*

¶10 Among the statutory grounds for termination that DCS alleged against Mother is abandonment. A.R.S. § 8-533(B)(1). Under Arizona law, "abandonment" means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1) (2017).

¶11 In deciding whether a parent has abandoned a child as defined in A.R.S. § 8-531(1), the superior court "should consider each of the stated factors—whether a parent has provided 'reasonable support,' 'maintain[ed] regular contact with the child' and provided 'normal supervision.'" *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18. When "circumstances prevent the . . . [parent] from exercising traditional methods of bonding with [the] child, [the parent] must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22.

¶12 On appeal, Mother argues that insufficient evidence exists to support the court's finding that she abandoned the children. The record, however, provides ample support for the superior court's findings that Mother abandoned the children by failing to maintain a normal parental relationship with them without just cause, failing to provide reasonable support, failing to maintain regular contact and failing to provide normal supervision.

¶13 By the time of the termination hearing, Mother had had no contact with her older two children for nearly a year, and had not seen her youngest child for more than six months. Mother had not written to the children during that time, and the DCS caseworker testified that when she talked to Mother, Mother never asked about the children. Mother does not dispute the court's finding that she had no contact with the children for

more than six months, and the record supports the court's finding that at no point since the dependency began did Mother ask for visits with her children.[2] Moreover, having heard the testimony, the superior court did not abuse its discretion in concluding that even though Mother was confined to a wheelchair following her accident, that did not excuse Mother's failure to try to maintain contact with the children. Mother argues that she did not intend to abandon her children, pointing to evidence that she told the caseworker during her incarceration that she "would try" to avail herself of services and that she lacked transportation. The court did not abuse its discretion in finding this evidence was insufficient to overcome the other evidence that Mother intentionally ceased all contact with her children.[3]

¶14 Finally, Mother also contends the court erred by finding by a preponderance of the evidence that severance was in the children's best interests. She contends "there was no evidence that the children would be placed into stable homes," and argues that she loves her children and was working to take care of them.

¶15 "[T]ermination of the parent-child relationship is in the child's best interests if the child would be harmed if the relationship continued or would benefit from the termination." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016) (quoting *Jose M. v. Eleanor J.*, 234 Ariz. 13, 17, ¶ 21 (App. 2014). The best-interest requirement "may be met if . . . the [party seeking termination] proves that a current adoptive plan exists for the child, or even that the child is adoptable." *Demetrius L.* at 3-4, ¶ 12 (quoting *Mary Lou C.*, 207 Ariz. at 50, ¶ 19). After a statutory ground for severance has been proved, in considering the child's best interests, "the court must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" *Demetrius L.* at 4, ¶ 15 (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35).

¶16 The superior court here did not abuse its discretion in finding that severance would be in the best interests of the children because it would further a plan of adoption, which would provide the children with

---

[2] Although Mother argues she asked to visit her children following her accident in November 2016, the caseworker testified to the contrary.

[3] To the extent that Mother's brief suggests that DCS failed to make reasonable efforts to provide her with appropriate reunification services, the statutory ground of abandonment requires no such proof. *Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 64, 66, ¶ 9, ¶ 15 (App. 1999).

permanency and stability. Moreover, the evidence also supported the court's finding that continued custody by Mother would likely "result in serious emotional or physical damage to the children." The court heard evidence that severance would allow the children to be adopted, and even though their current placements were unwilling to adopt them, the placements were meeting the children's needs for stability in the meantime.

## CONCLUSION

**¶17** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights.[4]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4] The termination order cited other statutory grounds for severance, but, having found the evidence sufficient to support severance based on abandonment, we need not address any of the other grounds. *Michael J.*, 196 Ariz. at 251, ¶ 27.